UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>v.                                                         )<br>)<br>F. WILLIAM MESSIER,                         )<br>)<br>                      **DEFENDANT** ) | CRIMINAL NO. 2:14-CR-83-DBH-01 |

### ORDER ON DEFENDANT MESSIER'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

The defendant F. William Messier has moved for judgment of acquittal or a new trial following a jury verdict that found him guilty on Counts One and Two of the Indictment and not guilty on Counts Three through Seven. Def.'s Mot. for J. of Acquittal or a New Trial ("Def.'s Mot.") (ECF No. 155). I address his arguments (the headings I use are his) in the order he has presented them and **DENY** the motion.

**I.   THE COURT'S INSTRUCTIONS ON CORRUPT ENDEAVOR WERE ERRONEOUS TO A CONSTITUTIONAL PROPORTION.**

Count One was a charge of corruptly endeavoring to impede administration of the tax laws in violation of 26 U.S.C. § 7212(a). The defendant argues that the "instructions for corrupt endeavor defeated *mens rea*, and amounted to a directed verdict in a criminal case," and that "[t]he instructions, required by the First Circuit, must be changed to require some intent to do something that violates the criminal law." Def.'s Mot. at 2. The defendant did

not object to this portion of the charge when I entertained objections before jury deliberations, and thus review is for "plain error." See United States v. Bailey, 405 F.3d 102, 110 (1st Cir. 2005); United States v. Hallock, 941 F.2d 36, 42 (1st Cir. 1991); see also United States v. Brandao, 448 F. Supp. 2d 311, 317-18 (D. Mass. 2006) (it is appropriate for district courts to apply plain error review to post-trial objections concerning jury instructions because of district courts' appellate role in these circumstances), aff'd, 539 F.3d 44, 57 (1st Cir. 2008).

In any event, the corrupt endeavor charge complies with First Circuit law. The First Circuit has stated: "Even actions that would otherwise be lawful may transgress [26 U.S.C. § 7212(a)] if they are undertaken with the intention of securing an unlawful benefit." United States v. Floyd, 740 F.3d 22, 31 (1st Cir. 2014). My charge here, in relevant part, was: "To act 'corruptly' means to act with the intent to secure an unlawful advantage or benefit or financial gain for oneself or for another. The acts themselves need not be illegal, so long as the defendant commits them to secure an unlawful benefit for himself or for others." There was no error in the charge.

**II.    THE INSTRUCTIONS TO THE JURY ON THE SEVERAL CHARGES, COMBINED WITH ANSWERS TO THE JURY'S QUESTIONS, WERE SO PREJUDICIAL TO DEFENDANT AS TO REQUIRE A NEW TRIAL.**

There appear to be three components to this argument: (a) that the instructions "were unconstitutionally unclear," Def.'s Mot. at 2, and created "confusion on the conspiracy charge," id. at 3, a confusion exacerbated by the nature of a defense under Cheek v. United States, 498 U.S. 192 (1991); (b) that there was error in my failure to give the instruction the defendant requested

2

concerning mental state; and (c) that I improperly answered the questions posed by the jury's notes.

(a) The instructions were not unclear, and properly charged the jury on corrupt endeavor (Count One) and conspiracy to defraud (Count Two) in accordance with First Circuit precedent. So far as Cheek is concerned,[1] the defendant secured a *not guilty* verdict on Counts Three through Seven, the only counts where I gave a Cheek-related instruction. In other words, he prevailed on this issue. Nothing in the instructions suggests any Cheek issues on Counts One and Two. To the extent that the defendant now is arguing that a Cheek defense applied to those two counts, he failed to make that objection to the jury charge. Moreover, the Cheek defense derives from the specific "willfulness" language in certain provisions of the criminal tax laws, such as 26 U.S.C. § 7203. There is no such "willfulness" requirement in the corrupt endeavor crime, 26 U.S.C. § 7212(a), or in the conspiracy to defraud crime, 18 U.S.C. § 371. Several circuits have held specifically that Cheek is not an available defense to the corrupt endeavor or conspiracy to defraud crimes. United States v. Williamson, 746 F.3d 987, 991-92 (10th Cir. 2014) (regarding 26 U.S.C. § 7212(a)); United States v. Kelly, 147 F.3d 172, 176 (2d Cir. 1998) (same); United States v. Damra, 621 F.3d 474, 501 n. 7 (6th Cir. 2010) (regarding 18 U.S.C. § 371); United States v. Derezinski, 945 F.2d 1006, 1012 (8th Cir. 1991) (same).

---

[1] The government and the defendant took conflicting positions on whether the defendant's actions were attributable to his views about the constitutionality of the Internal Revenue Code or his interpretation of what the tax laws required.

> (b) The defendant asked that I instruct the jury as follows:
>
>> It is Defendant Messier's defense that he did not possess the required mental state to have committed the crimes alleged. The burden of proof is upon the Government to prove beyond a reasonable doubt every element of the offenses charged.

Def. Messier's Requested Jury Instructions ("Def.'s Requested Instructions") at 1 (ECF No. 141). What I charged was this:

> It is the defense of each defendant that he did not have the intent required for any of the specific crimes charged. It is the government's burden to prove beyond a reasonable doubt each of the elements of the charged crime, including the necessary intent on the part of a particular defendant with respect to that crime.

Trial Tr. Excerpts ("Trial Tr.") at 23:23-24:4 (ECF No. 161). Instead of using the defendant's language "mental state," I used the term "intent." I did so because this was not an insanity defense case, see 18 U.S.C. § 17, and because "intent," not "mental state," is the relevant element of the crimes charged. See Trial Tr. at 14-15. There was no error in my presentation of the defendant's theory of the case.

With respect to Count One in particular, the defendant requested this language:

> Defendant Messier has presented expert psychiatric testimony on the issue of whether he had the necessary intent, as I have defined this, required for conviction. It is up to you to decide what weight to give to this evidence. The burden of proof remains with the Government to prove that Defendant Messier possessed the required element of intent, beyond a reasonable doubt.

With respect to Count Two, he requested:

> Defendant Messier has presented expert psychiatric testimony on the issue of whether he had the necessary willfulness, specific intent, or knowledge, as I have defined

> this, required for conviction. It is up to you to decide what weight to give to this evidence. The burden of proof remains with the Government to prove that Defendant Messier possessed the required elements of willfulness, specific intent, and knowledge beyond a reasonable doubt.

Alternatively, he asked for the following:

> Both Defendant Messier and the Government have offered expert testimony on the issue of state of mind. You may consider the testimony of both Doctor Voss and Doctor Wisch in deciding whether the Government has proven that William Messier possessed the required states of mind beyond a reasonable doubt.

Def.'s Requested Instructions at 1-2. I did give the jury a general expert witness instruction:

> You have heard testimony from witnesses described as experts. People who, by education and experience, have become expert in some field may state their opinion on matters in that field and may also state their reasons for the opinion.
> Expert opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.
> In this trial, these witnesses were, at times, asked hypothetical questions and they gave answers to such questions. In answering a hypothetical question, an expert witness must accept as true every asserted fact stated therein, but this does not mean that you must. If you find that assumed facts are not proven, you should disregard the answer based on the hypothetical question.

There was no need for me to name the doctors, to describe the nature of their testimony, or to single out this part of the evidence for the jury. See Trial Tr. at 14. Government and defense counsel took care of that thoroughly in their closing arguments. I also gave explicit instructions on the necessary intent that the government must prove beyond a reasonable doubt for each of the crimes

charged. I did not use the term "state of mind" for the same reason I did not use "mental state." There was no error.

    (c)    The jury sent out two notes during deliberations. The first, Ct. Ex. 1, asked:

> May we have the diagnostic criteria for delusional disorder? From the DSM-5. Do we have this information in the evidence?

I responded, as all counsel agreed that I should:

> DSM-5 was not admitted into evidence and therefore is not available to you. There was testimony about it.

Ct. Ex. 2. That was a correct statement and there was no error. The jury's second note, Ct. Ex. 3, asked:

> Does the last paragraph of [instructions page] 12-top of 13 (but because he disagreed w/ tax laws or authority of IRS, tax laws not valid or unconstitutional), override previous things in that paragraph-[example] bottom of 11-top of 12 re: he believed, as a misunderstanding of the statutes that he was not required to file a return?
>
> If we believe he believes he wasn't required to file, does it matter if he also believe[s] in constitutional issues, etc.?

After discussing the note with counsel, I answered as follows:

> The answer to your first question is that all portions of my instructions are equally important and one instruction does not override another instruction.
>
> You will have to answer the second question yourselves based upon the evidence and upon my instructions on the law.

Ct. Ex. 4. The defendant now argues, as he did when the jury's second note was received, that I should have answered the second question with a "no." As the transcript of that discussion reflects, I concluded that there was more than one plausible interpretation of what the jury was asking, and that a simple "no"

6

answer might misinterpret the jury's question.  Trial Tr. at 90-91.  Thus, there was no error in my answer to the jury that they must answer the question themselves based upon the evidence and the instructions.  More importantly, however, the portion of the charge questioned by the jury (they even gave page numbers of the instructions) dealt with only *Counts Three through Seven, on which the defendant received not guilty verdicts*.  The jury question had no bearing on Counts One and Two, and therefore the defendant was not prejudiced by my answer to the note.

### III. THE TWO CHARGES ON WHICH DEFENDANT WAS CONVICTED ARE [MULTIPLICITOUS] AND VIOLATE THE DOUBLE JEOPARDY CLAUSE.

The defendant failed to raise this argument by pretrial motion, as required by the federal rules.  See Fed. R. Crim. P. 12(b)(3) ("The following defenses, objections, and requests must be raised by pretrial motion . . . charging the same offense in more than one count (multiplicity) . . . .").  "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely," and a court will only consider a 12(b)(3) objection "if the party shows good cause."  Id. 12(c)(3); United States v. Walker, 665 F.3d 212, 227-28 (1st Cir. 2011); United States v. Rodriguez-Marrero, 390 F.3d 1, 11-12 (1st Cir. 2004); United States v. King, 628 F.3d 693, 699 (4th Cir. 2011).[2]  The defendant first raised multiplicity in his trial brief more than a month after the January 12, 2015, pretrial motions

---

[2] The 2014 rule amendments dropped section 12(e), which stated that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides."  The comments make clear that this change was due to possible confusion over the term "waives," and that 12(c)(3) "retains the existing standard for untimely claims."  Fed. R. Crim. P. 12, Comments to 2014 Amendments.

deadline. See Def.'s Trial Br. (ECF No. 103), at 5. He has not shown good cause for this delay.

Irrespective of the procedural misstep, his argument fails on substantive grounds. The First Circuit has made clear that the "prohibition against multiplicitous prosecutions derives from 'the Double Jeopardy Clause, which protects against multiple punishments for the same offense.'") United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012) (quoting United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011)). "A prosecution is multiplicitous when the government charges a defendant twice for what is essentially a single crime . . . ." Id. Thus, when considering a multiplicity claim, courts apply the Blockburger test for determining whether two charged offenses are actually one and the same for double jeopardy purposes. See United States v. Marino, 277 F.3d 11, 39 (1st Cir. 2002) ("The test to determine whether two offenses are considered the same offense for double jeopardy is set forth in Blockburger v. United States, 284 U.S. 299 . . . two offenses are separate offenses if each contains an element not contained in the other.").

The defendant claims that Counts One and Two contain "nearly the same allegations" and "rely on . . . duplicate acts." Def.'s Mot. at 7. But the two offenses are *not* the same for double jeopardy purposes because conspiracy charges are distinct from related substantive offenses. See United States v. Fornia-Castillo, 408 F.3d 52, 69 (1st Cir. 2005) ("Indeed, it has long been established that 'conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes,' because 'the agreement to do

the act is distinct from the [completed] act itself . . . .") (quoting United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998) and United States v. Felix, 503 U.S. 378, 390–91 (1992)); see also United States v. Marino, 277 F.3d at 39 (holding that "[b]ecause a RICO conspiracy contains a different element than a substantive RICO violation, namely an agreement with others to commit a substantive RICO violation, a substantive RICO violation and a RICO conspiracy are not the same offense for double jeopardy purposes.").[3]

### IV.   THE EVIDENCE WAS INSUFFICIENT ON THE ISSUE OF THE DEFENDANT'S DELUSION.

There was no insanity defense.  But the crimes charged did have intent requirements in their elements.  Therefore, over the government's objection (through a motion *in limine*), I permitted the defendant to introduce expert testimony that he suffered from a delusional disorder.  The government, in turn, introduced testimony from its own expert that the defendant did not suffer from a delusional disorder.  The defendant says that the government's expert also testified that there could be a delusion.  Def.'s Mot. at 9.  (What the government's expert testified on cross-examination was that both he and the defendant's expert could be right or wrong on their respective diagnoses.)  From that, the defendant argues that "the evidence was not sufficient to find that there was no delusional belief by Messier, beyond a reasonable doubt."  Id.

---

[3] Moreover, as the government points out, the conduct alleged in the corrupt endeavor charge (Count One) "includes several acts that were outside the time period alleged in Count Two." Gov't Resp. in Opp'n to Def.'s Mot. (ECF No. 160), at 9.  I decline to address the defendant's speculation as to the government's motive in bringing certain charges given the government's broad discretion in charging.  See United States v. Newell, 658 F.3d 1, 29 (1st Cir. 2011) ("[A]bsent a discriminatory motive on the part of prosecutors, what charge to file . . . generally rests entirely in the prosecutor's discretion.") (internal quotation omitted).

It was, of course, the government's burden to prove the necessary intent beyond a reasonable doubt for each crime. But in deciding whether the defendant had the necessary *mens rea* under Counts One and Two, the jury was not limited to the testimony of the two experts. The jury heard the defendant's own testimony and testimony about what he had said to other people at relevant times. From all the evidence in the case, the jury could find beyond a reasonable doubt that the defendant had the necessary intent for both corrupt endeavor and conspiracy to defraud (Counts One and Two).

**V.    A NEW TRIAL IS WARRANTED BASED ON PROSECUTORIAL MISCONDUCT.**

The defendant argues that in closing "the Government made an inappropriate and prejudicial argument that the United States Government would collapse if people didn't pay their fair share of taxes, and that this particular offense had to be taken with great concern to the jurors themselves, implying that the country would fail without convicting Messier." Def.'s Mot. at 9. The defendant argues that I improperly denied his motion for a mistrial.

What the Assistant United States Attorney actually said was this:

> You know, there was a Supreme Court Justice who served over 100 years ago in the early 1900's, his name was Oliver Wendell Holmes. In one of his cases, he wrote a decision in which he had a famous quote about taxes. He said taxes are the price we pay for a civilized society, and it's important to remember that, especially at this time of year.
> Now, if you go to Washington, DC, if you happen to be a tourist visiting the Smithsonian and you walk out the back door of the Natural History Museum, you'll look up and you'll see the IRS headquarters building and that's the quote right above the front door; taxes are the price we pay for a civilized society.
> We pay for the national defense, including the ships that are built at Bath Iron Works. It pays for Social Security. It pays for the FCC so that the airwaves are running

10

> efficiently. They pay for the Federal Aviation Administration so that the planes are flying safely and the pilots are competently licensed. They pay for all of the goods and services that we all expect from the federal Government. They pay for this courthouse, the system of justice that we have.

Trial Tr. at 38:1-22.

I did deny the mistrial motion, concluding that the remarks were not so egregious as to require that remedy. I pointed out that there was evidence—apart from the Holmes quotation—"along the same tenor." Although I did not then refer to specific evidence, what I had in mind was that one of the defendant's lessees had testified that he had told the defendant that everybody should pay taxes because the country is based on paying taxes. In addition, the government presented evidence that the defendant told people he did not have to pay taxes because he was self-sufficient, but that he received Social Security benefits, had worked at Bath Iron Works (a federal contractor), had a pilot's license from the Federal Aviation Administration, and rented out his radio towers to entities with FCC licenses. But I said that I wanted to think about whether to say something curative. In fact, I did give a curative instruction when the closing arguments were completed. I said:

> I'm going to ask you to actually go back to Page 2 [of the jury instructions]. I want to reread something on Page 2. Under Part 1, general rules concerning jury duties, I said before, I'll say it again, it's your duty to find the facts from all the evidence admitted in this case. To those facts you must apply the law as I give [it to] you. Determination of the law is my duty as the judge. It's your duty to apply the law exactly as I give it to you, whether you agree with it or not. *You must not be influenced by personal likes or dislikes, opinions, prejudices or sympathy. Opinions means things like opinions about the need for taxes or not.* Sympathy means sympathy for the lawyers, the defendants or the witnesses.

11

> Instead, the next sentence, you must decide the case solely on the evidence and according to the law.

Trial Tr. at 65:6-21 (emphasis added). I gave that broader curative instruction because I had concluded that, in addition to the government's appeal to the jury concerning society's need for taxation, the defendant's lawyer had inappropriately and repeatedly appealed to the jury's sympathy for the defendant. I am satisfied that any inappropriate appeal to tax policy arguments by the government was adequately cured by my later instruction.

### VI.  THE ACTS CHARGED TO SUPPORT CORRUPT ENDEAVOR WERE LEGAL ACTS.

The defendant argues:

> Every single act of Messier that was complained of in the corrupt endeavor charge was permitted by law. It is inappropriate to allow a criminal conviction to be sustained when it is based on legal conduct, simply because the legal conduct is highly offensive and frivolous. Acting in a highly offensive manner should not be the equivalent of a felonious corrupt endeavor. The Act was not created for the purpose of criminalizing incompetent attempted legal work.

Def.'s Mot. at 11. This argument is contrary to First Circuit law. I charged the jury appropriately under Floyd, and there was abundant evidence for the jury to find beyond a reasonable doubt that the defendant acted corruptly.

For all these reasons, the defendant's motion is **DENIED**.

**SO ORDERED.**

**DATED THIS 14TH DAY OF MAY, 2015**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

12